No. 04-97-00060-CV



GENERAL PROPERTY INVESTMENT, INC. and Burt L. Joiner,


Appellants



v.



Scott TOEPPICH,


Appellee



From the 73rd Judicial District Court, Bexar County, Texas


Trial Court No. 95-CI-12538


Honorable Juan Gallardo, Judge Presiding



Opinion by: Sarah B. Duncan, Justice


Sitting: Phil Hardberger, Chief Justice

 Tom Rickhoff, Justice

 Sarah B. Duncan, Justice


Delivered and Filed: February 17, 1999


AFFIRMED


 General Property Investment, Inc. and Burt Joiner (collectively General Property) appeal the
judgment entered against them for breach of a contract. We affirm.

Factual and Procedural Background


 On September 12, 1991, General Property entered into a listing agreement with real estate
agent T. Nash Hardeman, Jr., who was acting on behalf of Scott Toeppich, a licensed real estate
broker. General Property gave Hardeman a nonexclusive right to sell certain property for a six month
period at a six percent commission rate. General Property further agreed that, if Hardeman notified
it and registered with it a prospective owner to whom he had shown the property or with whom he
had negotiated, General Property would pay Hardeman the commission even if someone else
completed a sale to the registered purchaser before September 11, 1993. The property involved was
described in the listing agreement as "certain real property situated in Bexar County, Texas,
commonly known as Northwood Executive Building #1, 1600 N.E. Loop 410, San Antonio, Texas,
78209, and Northwood Executive Office Building #2, 1550 N.E. Loop 410, San Antonio, Texas
78209."

 After entering into the listing agreement, Hardeman contacted John Coates, another real
estate broker, to see if he had any interested buyers for the property. Coates and Hardeman orally
agreed that if Coates procured a buyer, they would split the commission. In turn, Coates informed
William Alston about the property. Alston, acting as a trustee for a group of investors, entered into
an earnest money contract on October 3, 1991, under which he agreed to buy the following property
from General Property:

 [a] part of Tract "A" Block 37 NCB 11837 San Antonio, Bexar County, Texas
commonly known as Northwood Executive Building No. 1, 1600 North East Loop
410 San Antonio, Texas 78209 and Northwood Executive Building No. 2, 1550
North East Loop 410, San Antonio, Texas 78209, Including Steak and Egg Kitchen
1566 North East Loop 410 San Antonio, Texas 78209, comprising approximately
3.792 acres.


Coates was the only real estate broker listed on this agreement. The sale never closed, but General
Property left Alston's earnest money with the title company while it worked on the sale "through
some other angles."

 After the listing agreement with Hardeman expired on March 11, 1992, General Property
negotiated directly with Alston over the sale of the property. On May 4, 1992, Alston signed another
earnest money contract, this time as president of AWA Corporation, agreeing to purchase the 3.792
acre tract of land described by metes and bounds as three separate parcels. Two weeks later, General
Property received a letter from Coates in which he foreswore any claim to a commission he might
have had in the sale to AWA Corporation. The sale closed on June 4, 1992.

 Three years later, Hardeman and Toeppich filed suit against General Property for breach of
contract and fraud. Although Hardeman was dismissed as a party, Toeppich's suit continued. The
jury found General Property breached the terms of the listing agreement and committed fraud. The
trial court entered a judgment against General Property, awarding Toeppich $78,000 in damages on
the contract claim plus attorney's fees.

Legal Sufficiency


 In points of error one, five, eight, and thirteen, General Property argues the trial court erred
in entering judgment against it because the evidence supporting Toeppich's contract claim was
legally insufficient. We disagree and therefore overrule these points of error.

 "If an appellant is attacking the legal sufficiency of an adverse finding of an issue on which
he did not have the burden of proof, the appellant must demonstrate on appeal that there is no
evidence to support the adverse finding." W. Wendell Hall, Standards of Review in Texas, 29 St.
Mary's L. J. 351, 478 (1998). In reviewing an appellant's no evidence argument, we consider "all
of the record evidence in a light most favorable to the party in whose favor the verdict has been
rendered," and we indulge "every reasonable inference in that party's favor." Formosa Plastics
Corp. USA v. Presidio Eng'rs and Contractors, Inc., 960 S.W.2d 41, 48 (Tex. 1998). If we find
anything more than a scintilla of evidence to support the contested finding, we must hold the
evidence is legally sufficient. See id.

Advising the Purchaser


 To recover a commission on a sale of property, a real estate broker must advise the purchaser,
when the offer to purchase is signed, the purchaser "should have the abstract covering the real estate
which is the subject of the contract examined by an attorney of the purchaser's own selection, or that
the purchaser or purchasers should be furnished with or obtain a policy of title insurance." Tex. Rev.
Civ. Stat. Ann. art. 6573a, § 20(c) (Vernon Supp. 1998). General Property argues there is no
evidence to support a finding that Toeppich met this requirement. However, a broker will not be
denied a commission on the ground he failed to advise the purchaser to have the abstract examined
or to obtain title policy insurance if the broker is precluded from giving such advice "by the act of
the seller in dealing directly with the buyer." Knight v. Hicks, 505 S.W.2d 638, 644 (Tex. Civ.
App.--Amarillo 1974, writ ref'd n.r.e.); see Verlander v. Patel, 714 S.W.2d 84, 86 (Tex.
App.--Houston [14th Dist.] 1986, no writ). General Property admitted at trial it excluded Hardeman
from the negotiations after the listing agreement expired so it could deal directly with Alston.
Likewise, Hardeman testified he was cut out of the negotiations and unable to participate in the
closing. Thus, although there is no evidence Toeppich advised Alston in accordance with article
6573a, section 20(c), the evidence establishes Toeppich was precluded from giving the advice
because General Property began dealing directly with Alston.

Identifying the Property


 Under article 6573a, section 20(b) of the Texas Revised Civil Statutes, a broker cannot bring
an action for the recovery of a real estate commission "unless the promise or agreement on which
the action is brought, or some memorandum thereof, is in writing and signed by the party to be
charged or signed by a person lawfully authorized by the party to sign it." Tex. Rev. Civ. Stat.
Ann. art. 6573a, § 20(b). Section 20(b) requires, in part, a description sufficient to meet the general
statute of frauds. Texas Builders v. Keller, 928 S.W.2d 479, 481 (Tex. 1996). That is, the written
agreement "must furnish, either within itself or by reference to some other existing document, the
means or data by which the real estate at issue may be identified." Id.

 General Property argues the section 20(b) statute of frauds was not met because its listing
agreement with Hardeman does not describe a restaurant between the described office buildings.
However, a commission agreement that contains an inadequate description of the property to be sold
may still be enforced if: "(1) the broker has fully performed, (2) the other party has knowingly
accepted the broker's services by completing the transaction arranged by the broker and receiving
benefits from that transaction, (3) the other party has acknowledged in writing his obligation for a
commission, and (4) documentary evidence establishes the amount of the commission due."
Carmack v. Beltway Dev. Co., 701 S.W.2d 37, 41-42 (Tex. App.--Dallas 1985, no writ); see Collins
v. Beste, 840 S.W.2d 788, 792 (Tex. App.--Fort Worth 1992, writ denied); cf. Boyert v. Tauber, 834
S.W.2d 60, 63 (Tex. 1992) (corroboration required in order to excuse compliance with section 20(b)
on the ground of partial performance). But cf. Brice v. Eastin, 691 S.W.2d 54, 57 (Tex. App.--San
Antonio 1985, no writ) (holding doctrine of part performance is not an exception to writing
requirements of section 20(b) when no written instrument existed reflecting a commission
agreement). The evidence demonstrates Toeppich fully performed under the listing agreement by
soliciting a buyer for the property--Alston. General Property accepted these services and, after the
listing agreement terminated, it continued to deal with Alston directly until an agreement was
reached. Furthermore, the listing agreement specifies a six percent commission rate, and General
Property acknowledged its obligation to pay this commission through Joiner's signature on the
listing agreement. Therefore, under the acceptance of benefits doctrine, the listing agreement is still
enforceable despite any deficiencies in the land description. See Carmack, 701 S.W.2d at 41-42;
Collins, 840 S.W.2d at 792.

Notifying the Owner


 To recover a commission on a sale made directly by General Property to a purchaser,
Toeppich was required to "notify [General Property] and register with [General Property] any
prospective purchasers to whom [Hardeman had] shown the Property and/or with whom [Hardeman
had negotiated] a purchase of the property." General Property contends this notice and registration
was required to be in writing under article 6573a, section 20(b) of the Texas Revised Civil Statutes,
and there is no evidence of such a written notice in the record.

 Nothing in the listing agreement requires the notice and registration to be in writing.
However, to be enforceable, a commission agreement must be evidenced by a writing. Tex. Rev.
Civ. Stat. Ann. art. 6573a, § 20(b). Here, the commission agreement, including the provision
enabling Toeppich to recover a commission for a sale directly between General Property and a
purchaser whom Toeppich had solicited, was in writing; thus, the provision is part of an enforceable
agreement. Id. Because registration of a potential purchaser was a fulfillment of this term of the
agreement, not an element of the agreement, registration was not required to be in writing by section
20(b). Oral notification and registration thus sufficed under both the statute and the agreement.


Attorney's Fees


 In its ninth point of error, General Property argues the trial court erred in awarding Toeppich
attorney's fees because (1) he was not entitled to judgment on his contract claim as a matter of law
and (2) he did not separate the time he spent on the fraud claim and the contract claim. We disagree.

 The first part of Toeppich's complaint merely restates his no evidence points, which we have
previously overruled. The second part of General Property's complaint is equally without merit.

 Ordinarily a party seeking to recover attorney's fees must "segregate fees incurred on claims
allowing recovery of fees from those that do not." Stewart Title Guar. Co. v. Aiello, 941 S.W.2d 68,
73 (Tex. 1997). However, a party may recover the entire amount of fees covering work done on all
claims if the claims are "dependent upon the same set of facts or circumstances and thus are
'intertwined to the point of being inseparable.'" Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1,
11 (Tex. 1991) (citing Gill Sav. Ass'n v. Chair King, Inc., 783 S.W.2d 674, 680 (Tex.
App.--Houston [14th Dist.] 1989), aff'd in part, modified in part, 797 S.W.2d 31 (Tex. 1990)).

 In his petition, Toeppich argued General Property committed fraud by making false promises
"to perform under the Listing Agreement." The jury found General Property committed fraud based
on the inducement into and breach of the contract. Moreover, before the trial court entered the
judgment, General Property argued Toeppich was entitled to recover under only one of its two
claims because "they truly arise from one thing." Because the contract and fraud claims were so
inextricably intertwined, Toeppich was not required to segregate the work his attorney performed
on each of his claims in order to recover attorney's fees. See, e.g., Gill, 783 S.W.2d at 680; Schindler
v. Austwell Farmers Coop., 829 S.W.2d 283, 288 (Tex. App.--Corpus Christi), aff'd as modified,
841 S.W.2d 853 (Tex. 1992). We therefore overrule General Property's ninth point of error.

Dismissal of General Property's Counterclaim


 General Property argues in its third point of error that the trial court erred in granting
summary judgment against it on its counterclaim seeking sanctions against Toeppich for bringing
a groundless lawsuit because there was no evidence its counterclaim lacked merit. We review a
summary judgment de novo. We will uphold a summary judgment only if the summary judgment
record demonstrates there is no genuine issue as to any material fact and the movant is entitled to
judgment as a matter of law on one of the grounds set forth in its motion. See Nixon v. Mr. Property
Management Co., 690 S.W.2d 546, 548 (Tex. 1985); Tex. R. Civ. P. 166a(c). In determining whether
a genuine issue of material fact exists, we view as true all evidence favorable to the nonmovant.
Nixon, 690 S.W.2d at 548-49.

 The fact that Hardeman was dismissed from the suit, General Property contends, is strong
evidence the plaintiffs' suit was indeed groundless. However, Hardeman was dismissed because he
was not a proper party to the suit, not because the underlying cause of action lacked merit. Moreover,
the summary judgment evidence establishes that: (1) General Property entered into a listing
agreement with Hardeman; (2) Hardeman signed the listing agreement on behalf of Toeppich; (3)
the listing agreement provided for a six percent commission; (4) Hardeman indirectly solicited
Alston as a potential buyer; (5) General Property sold the property to AWA Corporation represented
by its president, Alston; and (6) General Property did not pay Toeppich or Hardeman a commission.
Thus, Toeppich's contract and fraud claims clearly had a basis in fact. See Formosa Plastics, 960
S.W.2d at 47 (fraud elements); Southwell v. University of Incarnate Word, 974 S.W.2d 351, 354-55
(Tex. App.--San Antonio 1998, pet. denied) (contract elements). While this evidence may not have
been strong enough to conclusively establish Toeppich's right to recover on his contract and fraud
claims, it certainly was enough to conclusively prove those claims were not groundless. See Tex. R.
Civ. P. 13 ("'Groundless' means no basis in law or fact and not warranted by good faith argument
for the extension, modification, or reversal of existing law."); cf. Donwerth v. Preston II Chrysler-Dodge, Inc., 775 S.W.2d 634, 637 (Tex. 1989) (suit not necessarily groundless even though evidence
supporting the claim is legally inadmissible or subject to other defects as long as there is a good faith
basis to believe the evidence might be admissible or lead to admissible evidence). We therefore
overrule General Property's third point of error.

Trial Amendments


 In its second point of error, General Property argues the trial court erred in allowing
Toeppich to amend his petition during trial because the trial amendments asserted the following new
theories of recovery and new defenses: (1) Hardeman was acting on behalf of Toeppich, (2)
Toeppich acted either directly or through Coates in soliciting Alston, (3) Toeppich was entitled to
attorney's fees on appeal, and (4) Toeppich was prevented by General Property from giving notice
to Alston as required by article 6573a, section 20(c) of the Texas Revised Civil Statutes.

 Generally, we review a trial court's decision to permit a trial amendment under the abuse of
discretion standard. See State Bar of Texas v. Kilpatrick, 874 S.W.2d 656, 658 (Tex. 1994).
However, a trial court does not have the discretion to "refuse a trial amendment unless (1) the
opposing party presents evidence of surprise or prejudice, or (2) the amendment asserts a new cause
of action or defense, and thus is prejudicial on its face." Id.

 General Property presented no evidence it was surprised or prejudiced by the trial
amendments, arguing instead the amendments were prejudicial on their face because they asserted
new causes of action and defenses. However, this is an incorrect reading of Toeppich's amendments.
First, the allegation that Toeppich was entitled to attorney's fees on appeal was not new--Toeppich
had asserted this before trial in an earlier petition. Furthermore, the remaining amendments of which
General Property complains did not constitute new causes of action or defenses, but rather elaborated
on the causes of action already asserted. See Zavala v. Trujillo, 883 S.W.2d 242, 246 (Tex. App.--El
Paso 1994, writ denied); Southwestern Bell Tel. Co. v. Griffith, 575 S.W.2d 92, 98 (Tex. Civ.
App.--Corpus Christi 1978, writ ref'd n.r.e.). Because there was no evidence General Property was
surprised or prejudiced by the trial amendments, and because the amendments did not assert any new
causes of action or defenses, the trial court had no choice but to grant the amendments. We therefore
overrule General Property's second point of error.

Evidenciary Rulings


 Under its fourth and seventh points of error, General Property argues the trial court erred in
excluding certain evidence during trial. We again disagree.

 We review a trial court's exclusion of evidence under the abuse of discretion standard. See
City of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex. 1995). With respect to factual matters,
a trial court abuses its discretion if, under the record, it reasonably could have reached only one
decision and it failed to do so. See Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992). However,
"[a] trial court has no 'discretion' in determining what the law is or applying the law to the facts.
Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse
of discretion ." Id. If we determine the trial court committed error, we will reverse the trial court's
judgment only if the complaining party can demonstrate "that the error probably resulted in an
improper judgment." Alvarado, 897 S.W.2d at 753; see Tex. R. App. P. 44.1(a).


Evidence of the Relationship Between Coates and Toeppich


 General Property contends the trial court erred in excluding "all documents and testimony
concerning John Coates' relationship as a broker with [Toeppich] and evidence concerning the fact
that [Toeppich's] claims were derivative of Coates' claims" because the evidence was relevant.
However, the trial court did not exclude all evidence of Coates' relationship with Toeppich. Rather,
the court excluded General Property's "Exhibit 1," Coates' letter to General Property in which he
disclaimed any right to a commission on the sale of its property, and all of Coates' testimony relating
to the letter. The letter stated:

 I understand that there is a contract in the title company on the [Northwood
Executive Buildings] between General Properties Investment, Inc. as seller and
AWA Development as buyer.


 Although I previously submitted a contract on behalf of another buyer, I have
no claims against General Properties, Inc. as to a sales commission on this
transaction.


Nor did the trial court exclude this evidence because it was irrelevant; the evidence was excluded
because the trial court determined its probative value was outweighed by the danger that it would
confuse the jury since it fails to (1) state why Coates was relinquishing his right to a commission,
(2) identify the other buyer for whom Coates submitted a contract, and (3) mention Toeppich or
Hardeman. As a result, the letter had a high potential for confusing the jury on whether Toeppich
was entitled to a commission, while its probative value on the issues of the relationship between
Toeppich and Coates and whether Toeppich's claims were derivative of Coates' was minimal. See
Tex. R. Evid. 403; Reynolds v. Warthan, 896 S.W.2d 823, 828 (Tex. App.--Tyler 1995, no writ).
Because the court was well within its discretion in excluding the Coates letter and the testimony
thereon, we overrule General Property's fourth and seventh points of error.

Joiner's Testimony on Attorney's Fees


 General Property also argues the trial court erred in excluding its attorney's fees evidence.
However, this error, if any, is harmless because General Property is not entitled to attorney's fees.
See Bily v. Omni Equities, Inc., 731 S.W.2d 606, 614 (Tex. App.--Houston [14th Dist.] 1987, writ
ref'd n.r.e.); Tex. R. App. P. 44.1(a). Accordingly, we overrule General Property's seventh point of
error.

Jury Charge


 In its sixth, tenth, and eleventh points of error, General Property contends the trial court
submitted an erroneous jury charge. We disagree.

 We review jury charge error under the abuse of discretion standard of review. Wal-Mart
Stores, Inc. v. Middleton, No. 04-96-01017-CV, 1998 WL 466105, *1 (Tex. App.--San Antonio
Aug. 12, 1998, pet. filed) (citing Texas Dep't of Human Servs. v. E.B., 802 S.W.2d 647, 649 (Tex.
1990)). With respect to factual matters, a trial court abuses its discretion if, under the record, it
reasonably could have reached only one decision and it failed to do so. See Walker, 827 S.W.2d at
840. However, "[a] trial court has no 'discretion' in determining what the law is or applying the law
to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute
an abuse of discretion ." Id.

Question and Instruction on Property Identification


 The jury was asked in Question 1, "Do you find that the parties identified the property that
was to be sold pursuant to the listing agreement that was signed by Mr. Hardeman and Mr. Joiner
on 12 September 1991?" The jury was then instructed

 that in order to answer "yes" to this Question, you must have found that there was a
written description sufficient to identify the particular land that was the subject of the
listing agreement. The written description may be contained in one written document
or may be contained in several documents. If the description is contained in several
documents, the several documents must have existed at the time the listing agreement
was signed and the several documents, if read as a whole, must identify the particular
property to be sold.


General Property argues the trial court erred in submitting Question 1 because it presented a question
of law and the accompanying instruction because it misstated the law. However, General Property
waived its first ground by failing to object to the submission of Question 1. See Tex. R. Civ. P. 274;
Boorhem-Fields, Inc. v. Burlington N. R.R. Co., 884 S.W.2d 530, 535 (Tex. App.--Texarkana 1994,
no writ). And any error committed by the court in submitting the instruction was harmless because,
as we discussed under General Property's no evidence claims, the property description in the listing
agreement was excepted from the requirements of section 20(b). See Carmack, 701 S.W.2d at 41-42;
Collins, 840 S.W.2d at 792; Tex. R. App. P. 44.1(a). We therefore overrule General Property's sixth
and eleventh points of error.

Definition of "Agency"


 General Property also contends the trial court erred in submitting a definition of "agency"
that was not limited to the relationship between Toeppich and Hardeman. However, General
Property did not raise this objection until its motion for a new trial and thus waived it. See Russell
v. Ramirez, 949 S.W.2d 480, 491 (Tex. App.--Houston [14th Dist.] 1997, no writ); Champion v.
Wright, 740 S.W.2d 848, 856-57 (Tex. App.--San Antonio 1987, writ denied). We therefore
overrule General Property's tenth point of error.



Jury Misconduct


 In its twelfth point of error, General Property argues the trial court erred in failing to grant
a new trial because the jury (1) answered Question 1 "yes" when there was no evidence to support
that position, (2) awarded fraud damages despite the fact there was no evidence General Property
committed fraud, and (3) answered all of the questions first in pencil to ensure Toeppich would win
and then went back and answered the questions in pen.

 We review a trial court's ruling on a motion for new trial based on jury misconduct under
the abuse of discretion standard. Pharo v. Chambers County, Tex., 922 S.W.2d 945, 948 (Tex. 1996).

 The first portion of General Property's argument merely restates the no evidence argument
overruled earlier in our opinion. The second alleged instance of misconduct, as General Property
admits in its brief, is "moot" because Toeppich did not recover on its fraud claim. See Tex. R. App.
P. 44.1(a). Finally, General Property presented no evidence to support the third alleged instance of
misconduct. A motion for new trial based on jury misconduct must be accompanied by a juror's
affidavit alleging outside influence. Weaver v. Westchester Fire Ins. Co., 739 S.W.2d 23, 24 (Tex.
1987); Tex. R. Civ. P. 327(a). If an affidavit is not attached, the movant must present some
explanation for failing to obtain the affidavit. Ramsey v. Lucky Stores, Inc., 853 S.W.2d 623, 635-36
(Tex. App.--Houston [1st Dist.] 1993, writ denied); see American Home Assurance Co. v. Guevara,
717 S.W.2d 381, 384 (Tex. App.--San Antonio 1986, no writ). This ensures the movant's motion
for new trial is based on actual knowledge of juror misconduct rather than mere suspicion. See
Guevara, 717 S.W.2d at 384-85. The trial court thus did not err in denying the motion. We therefore
overrule General Property's twelfth point of error.


 The trial court's judgment is affirmed.


 Sarah B. Duncan, Justice

DO NOT PUBLISH


Return to
4th Court of Appeals Opinions